# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

JAMES F. LOVE,

                Petitioner,

          -vs-

HAMILTON COUNTY COURT
 OF COMMON PLEAS,

                Respondent.

:

:

:

:

Case No. 1:09-cv-592

District Judge S. Arthur Spiegel
Magistrate Judge Michael R. Merz

---

## SUBSTITUTED REPORT AND RECOMMENDATIONS

---

This pre-trial habeas corpus action under 28 U.S.C. § 2241 is ripe for decision.  The

Magistrate Judge has considered both parties Objections to his original Report and

Recommendations (Doc. Nos. 20, 25, & 26),[1] the Amended Petition (Doc. No. 34), the Amended

Return of Writ (Doc. No. 35), Petitioner's Reply (Doc. No. 39), and oral argument on November

4, 2011.

    Petitioner brought this case to prevent his re-trial in Hamilton County Common Pleas Court

on four counts of rape of a child under thirteen (Case No. B-9601201).  He pleads one ground for

relief under the Double Jeopardy Clause:

> Retrial of petitioner on the 1996 indictment and the 2007Amended
> bill of particulars would violate Petitioner's rights under the Double
> Jeopardy Clause of the Fifth Amendment to the United States

---

[1] The original Report was withdrawn and the parties ordered to plead anew and argue the
case orally in the hope of greater clarity on the issues.  (See Doc. No. 29.)

Constitution under the facts and legal theories as follows:

(Amended Petition, Doc. No. 34, ¶ 46, PageID 1540.)

## Procedural History

Love was indicted in 1986 on one count of forcible rape of a child under thirteen in violation of Ohio Revised Code § 2907.02(A)(1)(b)(Case No. B-8603968). *State v. Love*, 2006 Ohio 6158, 2006 Ohio App. LEXIS 6150, ¶ 3 (1st Dist. Nov. 22, 2006)("*Love 2006*").  He was convicted (without the force specification) and sentenced, but released in 1996 on a grant of new trial based on ineffective assistance of trial counsel.  *Id.*  ¶ 8.   While awaiting re-trial, he was indicted in Case No. B-9601201 on four counts of the same offense and the two cases were joined for trial.  *Id.*  ¶ 9. A jury convicted him of all four counts in the 1996 case and he was sentenced to four consecutive life sentences.  *Id.*  ¶ 10.  He was also reconvicted in the 1986 case and is serving a sentence on that conviction which is not before the Court in this case.

The Ohio Court of Appeals summarized the testimony of the victim in the 1996 case, Sarah Adams.  She was born in 1977 and met Love in 1988 when he began dating her mother, Barbara Neal.  *Love 2006* ¶ 4.  According to her testimony "one evening before Christmas of 1988, Love came into her room while she was sleeping and performed cunnilingus on her."  *Id.*  at ¶ 5. Additional sexual abuse continued monthly during 1989, according to Sarah's testimony.  *Id.*  at ¶ 6.  Sometime before the spring of 1989, Love threatened to kill her and her mother if she told anyone what was happening.  *Id.*  However, by the fall of 1990, again according to Sarah's testimony, Love

was in prison on the 1986 rape case and she told her mother and Love's wife what had happened. *Id.* at ¶ 7.

None of these three women approached the police in 1990. *Id.* However, in 1996, when Love won a new trial on the 1986 conviction and was released pending the new trial, he called Barbara to renew their relationship. *Id.* Noting that Sarah appeared frightened by this, Barbara called the police and Sarah then told them what had happened, leading to Love's indictment in this case. *Id.*

In the 1996 case, trial court granted a judgment of acquittal on six of the ten counts of sexual abuse, *Id.* at ¶ 9, but the jury convicted on the four remaining counts and Love was sentenced as noted above. Love had raised an alibi defense at trial, but without very strong evidence. *Id.* at ¶ 15. After sentencing in the 1996 case, Love gathered evidence in support of his alibi over an extended period of time, summarized by the Court of Appeals at ¶¶ 18-29. He then sought a new trial on the basis of newly-discovered evidence which he asserted could not have been discovered prior to trial. Common Pleas Judge Kobicki denied the motion on the merits.

Love appealed raising nine assignments of error, the second of which was that the trial court had abused its discretion in finding the new evidence was merely cumulative. *Id.* at ¶ 32. Applying the relevant Ohio precedent, *State v. Petro*, 148 Ohio St. 505 (1947), the appellate court agreed Love was entitled to a new trial. *Id.* at ¶¶ 41-67. It summarily rejected his remaining assignments of error -- including ones that asserted his conviction was plain error and that he was actually innocent -- as moot because he was to receive a new trial. *Id.* at ¶ 69. Critically, as to the new evidence, it held:

> [*P50] Love's new evidence, if believed by a jury, would have showed that he could not have committed the crimes alleged by Sarah on the dates she testified to at trial. He could not have performed cunnilingus on her around Christmas 1988 and during the months that

followed when he was not in the country. It is only logical then to conclude that this new evidence was material and relevant to his conviction.

[*P51] We do not make this determination lightly. We do not know whether Love performed sexual acts on Sarah. The jury evidently believed that he had, and there were two other convictions that showed that Love had a predilection for performing cunnilingus on minor children. And there were times in the fall of 1989 and before Love went to prison in 1990 when he admittedly dated Sarah's mother, Barbara. Perhaps Sarah was merely confused about the dates of the alleged crimes. But Love had good evidence that the dates she provided during her testimony could not have been dates when he committed the alleged crimes – Love was not in the United States.

*Id.* at ¶¶ 50-51.

On remand but prior to retrial, the State and Love stipulated that he was in Mexico from November 17, 1988, to May 17, 1989, and in Mexico and Belize from May 1, 1989, until July 20, 1989 (Exhibit B to Petition, PageID 42). On the same day, the State filed an amended Bill of Particulars which states

In addition to the allegations set forth within the Indictment, the State further asserts that on or about undetermined dates during the later [sic] half of 1989 through April 2, 1990, the defendant engaged in sexual conduct with S.A., who was not the spouse of the defendant and was less than thirteen years of age at the time. S.A. was born on October 7, 1977. More specifically as to counts One, Four, and Five, the defendant forced S.A. to engage in cunnilingus. As to Count Three, the defendant forced S.A. to engage in fellatio with him. The defendant threatened to kill S.A. and her mother if she told anyone. These offenses occurred at 6225 Savannah Avenue in Cincinnati, Ohio.

(Exhibit C to Petition, PageID 44.)

On remand the case had been reassigned to Common Pleas Judge Robert Ruehlman.[2] On

---

[2] Although not required by law, counsel advised at oral argument that it is standard practice in the Hamilton County Common Pleas Court to reassign cases when they are remanded

October 19, 2007, Love filed a Motion to Dismiss stating eight different reasons and explaining them over thirty-seven pages (Exhibit D to Petition, PageID 47-83.) One or more of those arguments must have been persuasive, because on February 15, 2008, Judge Ruehlman granted the Motion to Dismiss. However, he gave no explanation of his decision; the Entry reads in its entirety:

> This matter having been heard on Defendant's Motion to Dismiss the Indictment and after having been fully briefed and argued on the matter, this Court finds Defendant's motion well taken for the reasons asserted by Defendant and hereby dismisses the indictment.

(Exhibit G to Petition, PageID 179).

Neither the Motion to Dismiss nor the Entry granting it state under which Ohio Rule of Criminal Procedure the motion was brought. Ohio R. Crim. P. 12 generally governs motions brought before the trial including defenses directed to the indictment. Ohio R. Crim. P. 12(F) provides in part that "[w]here factual issues are involved in determining a motion, the court shall state its essential findings on the record," but no such findings are made in the Entry, nor were they sought by either party.

The State appealed raising the single assignment of error that the trial court erred in granting the Motion to Dismiss. *State v. Love*, 2008 Ohio 6833, 2008 Ohio App. LEXIS 5735, ¶ 7 (1st Dist. Dec. 26, 2008)("*Love 2008*"). Beginning with the double jeopardy issue, the court noted that Ohio Revised Code § 2945.82 provides that "[w]hen a new trial is granted by the trial court, or when a new trial is awarded on appeal, the accused shall stand for trial upon the indictment or information as though there had been no previous trial thereof." *Id.* at ¶ 8. The court cited Ohio Supreme Court precedent interpreting this statute as being in accord with "'the fundamental, long-settled principle

for a new trial.

"that a successful appeal of a conviction *precludes* a subsequent plea of double jeopardy." *Id.* at ¶ 8, *citing State v. Keenan*, 81 Ohio St. 3d 133, 141 (1998), *quoting United States v. Scott*, 437 U.S. 82 (1978.)

The appellate court rejected Love's argument that the Stipulation changed that outcome:

> [*P9]  Love notes, though, that the stipulation established that the offenses could not have occurred on certain of the dates indicated by Sarah at trial. He contends, therefore, that the jury's guilty verdict was erroneous and that the later stipulation amounted to a constructive acquittal as to those dates.
>
> [*P10]  We find no merit in Love's argument. As the state correctly notes, the jury did not find that Love had committed the offenses on any specific dates. Its general verdict merely indicated that it had found Love guilty of committing the offenses.
>
> [*P11]  The newly discovered evidence did not mean that the charges had been fabricated or were groundless; as this court recognized in Love II, there remained the possibility that Sarah had merely been confused or mistaken about the times of the offenses. [citing *Love 2006* at ¶ 51]Accordingly, the later stipulation did not require a finding that the jury had erroneously convicted Love of the offenses and that he was entitled to an acquittal.

*Id.* at ¶¶ 9-11.

Love had defended the appeal in part by asserting that Judge Ruehlman's Entry amounted to an acquittal (Brief of Defendant-Appellee, Ex. H to Petition, Doc. No. 1).  The court of appeals also rejected that argument, holding that a motion to dismiss an indictment under Ohio R. Crim. P. 12(C) cannot raise factual issues:

> **Motion to Dismiss Based on Evidentiary Arguments**
>
> [*P12]  In a similar vein, the state's stipulated inability to prove that the offenses had occurred during a certain portion of the indictment period was not a proper basis for dismissal of the indictment.
>
> [*P13]  A motion to dismiss can raise only matters that are capable

of determination without a trial of the general issue. Crim.R. 12(C); *State v. Ethridge,* 8th Dist. No. 87859, 2006 Ohio 6768, at P5; *State v. Serban*, 5th Dist. No. 2006 CA 00198, 2007 Ohio 3634, at P25. If a motion to dismiss requires the examination of evidence beyond the face of the indictment, the issue must be presented in a motion for acquittal at the close of the state's case. *Serban, supra*, at P26. Thus, even where the state and the defendant have stipulated the facts that form the basis of the charges, a motion to dismiss is premature, because there is no equivalent for a motion for summary judgment in criminal proceedings. *Id. See, also, State v. Scott*, 174 Ohio App.3d 446, 2007 Ohio 7065, 882 N.E.2d 500, P9.

*Id.* at ¶¶ 12-13.

The Court also held the State was not advancing an "alternative theory of guilt," in the Amended Bill of Particulars, but correcting a variance in the evidence. "Once again, there was the possibility [noted in *Love 2006* at ¶ 51] that Sarah had been confused or mistaken about when the offenses had occurred, and Love may certainly use her previous testimony to impeach her in the new trial." *Id.* at ¶ 17.

The Court rejected Love's assertion that the State's failure to ask for findings under Ohio R. Crim. P. 12(F) required an affirmance: "Our review of the record reveals no basis for the dismissal, and the state's failure to request findings of fact and conclusions of law was therefore irrelevant." *Id.* at ¶ 18. Finally it rejected Love's claim that there was insufficient evidence to support the conviction for abuse in 1990 because this claim was not raised on direct appeal and was therefore barred by Ohio's criminal *res judicata* doctrine. *Id.* ¶ 19.

The dismissal was thus reversed and the case remanded for the new trial. *Id.* at ¶ 20. The Ohio Supreme Court denied leave to appeal and dismissed the claimed appeal of right as not involving any substantial constitutional question. *State v. Love*, 2009 Ohio 2045, 121 Ohio St. 3d 1476 (2009). The instant Petition followed.

## Analysis

Having obtained a new trial on his own motion, Petitioner now seeks to prevent that new trial on the basis of a stipulation with the State that will preclude conviction if the victim testifies at the new trial to the same dates she testified to at the first trial. Rather than try the case with that stipulation, Love insists on dismissal on the ground that the new trial would violate his Double Jeopardy rights.

In the Amended Petition, Love pleads only one Ground for Relief, to wit, that his retrial would violate the Double Jeopardy Clause. But in his original Petition, Love pled that there were "approximately 24 separate Grounds upon which the Indictment should be dismissed...." (Petition, Doc. No. 1, ¶ 10 PageID 3.) In the original Report and Recommendations, the Magistrate Judge read the original Petition as raising five different constitutional claims (Report and Recommendations, Doc. No. 20, PageID 1341.) This led to confusion and Petitioner's Objections. In the Amended Petition, Love makes it clear he is raising only the Double Jeopardy claim, although he has a number of theories as to why his re-trial is barred by the Double Jeopardy Clause.

## Generally Applicable Law

Habeas corpus petitioners must exhaust remedies available to them in the state courts before proceeding in federal habeas. *Ex parte Royall*, 117 U.S. 241 (1886); *Picard v. Connor*, 404 U.S. 270

(1971). In Ohio, this usually includes direct and delayed appeal of an issue to the Ohio Court of Appeals and the Ohio Supreme Court. *Mackey v. Koloski,* 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini,* 424 F.2d 134, 140 (6th Cir. 1970).

However, the Supreme Court has made it plain that the Double Jeopardy Clause protects against a second trial, not just against conviction at a second trial. *Abney v. United States,* 431 U.S. 651 (1977). For that reason, a double jeopardy claim is cognizable in federal habeas corpus prior to the "second" trial. *Justices of the Boston Municipal Court v. Lydon,* 466 U.S. 294 (1984); *Reimnitz v. State's Attorney of Cook County,* 761 F.2d 405, 408 (7th Cir. 1985); *Malinovsky v. Court of Common Pleas of Lorain County*, 7 F.3d 1263 (6th Cir. 1993). To put it another way, a habeas petitioner with a double jeopardy claim is not required to exhaust the remedy of direct appeal from a verdict at a second trial before invoking our habeas jurisdiction. The Sixth Circuit reaffirmed these principles and specifically affirmed a district court's granting of a stay of Ohio Common Pleas Court proceedings pending decision on a pretrial double jeopardy habeas petition in *Harpster v. Ohio*, 128 F.3d 322 (6th Cir. 1997). In addition, the Ohio courts do not consider a denial of a motion to dismiss on double jeopardy grounds to be a final appealable order. *State v. Crago*, 53 Ohio St. 3d 243, 244 (1990). Therefore Love has exhausted available state court remedies for his Double Jeopardy claim and the exhaustion doctrine is no bar to this Court's considering that claim, including all the theories on which Love relies for that claim.

However, a habeas petitioner cannot make other claims into Double Jeopardy claims and thereby avoid the exhaustion requirement merely by labeling those claims as "double jeopardy" claims. The Court considers Petitioner's claims in this case only to the extent they arise under the Double Jeopardy Clause.

Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. §2241(c)(3); *Wilson v. Corcoran,* 562 U.S. ___, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

To put it another way, a federal habeas court does not sit to hear "appeals" from state courts on state constitutional, statutory, or common law questions. This Court considers the prior decisions of the Hamilton County courts in this case only to the extent they raise federal constitutional questions.

The parties agree that the Antiterrorism and Effective Death Penalty Act of 1996 does not apply to these proceedings. Questions of law and mixed questions of law and fact are thus considered by this Court *de novo*. *Thompson v. Keohane*, 516 U.S. 99 (1995). Although Petitioner contended in his Amended Petition (Doc. No. 34, ¶ 35) that a *de novo* standard applies to all questions in the case, his counsel conceded at oral argument that state court findings of historical fact are to be reviewed on a clearly erroneous standard, even pre-AEDPA. See *Rushen v. Spain*, 464 U.S. 114, 120 (1983); *Marshall v. Lonberger*, 459 U.S. 422 (1983); *Sumner v. Mata,* 455 U.S. 591 (1982).

**State Court Findings of Fact**

Petitioner asserts that the finding in *Love 2008* that "the alibi stipulated to by the respondent (See, Exhibit B), only covers a 'portion' of the time frame testified to at the 1996 trial" is clearly erroneous and not entitled to a presumption of correctness[3] (Amended Petition, Doc. No. 34, ¶¶ 36-44). This Court agrees with Petitioner. As the Court of Appeals found in *Love 2006* at ¶ 50, the newly-discovered evidence covers all the dates Sarah Adams testified to in the first trial. As it stated, "if the jury believed the newly-discovered alibi evidence, [Love] could not have committed the crimes alleged by Sarah on the dates she testified to at trial. He could not have performed cunnilingus on her around Christmas 1988 and during the months that followed when he was not in the country." *Id.* The Stipulation then makes it unnecessary for Love to present the newly-discovered evidence to a jury by agreeing to its truth, to wit, that Love was out of the country between November 17, 1988, and July 20, 1989 (Exhibit B to Petition).[4]

Nowhere in *Love 2008* does the Court of Appeals suggest it disagrees with the disposition made in *Love 2006* or even with any of the subsidiary findings. In fact, it acknowledges the accuracy of Petitioner's understanding of the Stipulation later in the Opinion: "Love notes, though,

---

[3] The presumption of correctness of state court historical fact finding, both pre- and post-AEDPA, is not a conclusive presumption and can be overcome by a showing that it is clearly erroneous. Thus even if the relevant finding received a presumption of correctness, proof that the finding was clearly erroneous would make the presumption irrelevant.

[4] The copy of the Stipulation filed in this Court and apparently prepared in Mr. Gallagher's office, has in typescript "in Mexico from November 17, 1988 to May 17, 1989 and in Mexico and Belize from May 20, 1989 until July 20, 1989." On the copy, however, the date May 20 has been stricken through and May 1 written in in hand. The change has not been initialed by the signators to the Stipulation. In the Amended Petition, Love implies the unmodified text is correct when he pleads that the newly-discovered evidence proves he was out of the country "from November 17, 1988 until July 20, 1989 with the exception of three days in late May, 1989." (Amended Petition, Doc. No. 34, ¶¶ 46(1)(i) & (m).) It does not appear that the difference is material.

that the stipulation established that the offenses could not have occurred on certain of the dates indicated by Sarah at trial." *Id.* at ¶ 9. This Court concludes, then, that the statement at ¶ 4 of *Love 2008* that the newly-discovered evidence only covered a portion of the time covered by Sarah's testimony is an inadvertent misstatement by the second Court of Appeals panel, not intended to conflict with the first panel's decision. The newly-discovered evidence and the stipulation based on it cover all of the dates testified to by Sarah Adams in the 1996 trial.

## State Appellate Court Jurisdiction

Petitioner argued in his Traverse that the Court of Appeals did not have jurisdiction to hear the State's appeal from Judge Ruehlman's Dismissal Entry. (Traverse, Doc. No. 17, PageID 1306, citing *State v. Damico*, 1990 WL 67990, 1990 Ohio App. LEXIS 1951(1ˢᵗ Dist. 1990)). *Damico* does not support that proposition and in fact confirms the jurisdiction conferred on Ohio courts of appeal by Ohio Revised Code § 2945.67 which provides as quoted in *Damico*:

> A prosecuting attorney * * * may appeal as a matter * * * [of] right any decision of a trial court in a criminal case * * * which decision grants a motion to dismiss all or any part of an indictment, complaint, or information, a motion to suppress evidence, or a motion for the return of seized property or grants post conviction relief pursuant to Sections 2953.21 to 2953.24 of the Revised Code, and may appeal by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case * * *.

In *Damico* the Court distinguished those instances in which Ohio Revised Code § 2945.67(A) grants appellate jurisdiction – interlocutory matters – from situations where a new trial is granted "due to the legal insufficiency of the evidence." In the latter instance, retrial would be barred by the Double

Jeopardy Clause. *Damico* *2, citing *Burks v. United States*, 437 U.S. 1 (1978), and *Wang v. Withworth*, 811 F.2d 957 (6th Cir. 1986).

In the Amended Petition Petitioner repeats the assertion of lack of appellate jurisdiction without citing *Damico*. (Amended Petition, Doc. No. 34, PageID 1550-1551.) His argument is nonetheless the same: the appellate court lacked jurisdiction because the Entry was the functional equivalent of an acquittal.

Petitioner correctly argues that lack of subject matter jurisdiction can be raised at any time to attack the validity of an underlying judgment. *United States v. Cotton*, 535 U.S. 625 (2002). But here Ohio Revised Code § 2945.67 expressly grants jurisdiction to review interlocutory orders dismissing indictments when appeal is taken by the State. It would of course be constitutional error to attempt to reverse an acquittal. There is no doubt that if the Court of Appeals in *Love 2008* had found Judge Ruehlman's Entry to be the equivalent of an acquittal, it would have had the same jurisdiction under Ohio Revised Code § 2945.67 to affirm that Entry. But the fact that the Court of Appeals committed error - in Petitioner's eyes - does not mean it did not have subject matter jurisdiction. Jurisdiction and error committed by a court with jurisdiction are separate issues.

Moreover, Petitioner sought to have the appeal dismissed for lack of jurisdiction and the court of appeals denied that motion, determining that it did have jurisdiction to proceed. Of course the question whether a state court has jurisdiction of a question is an issue of state law on which this Court is bound by the state court's determination. Therefore the judgment of the Court of Appeals reversing Judge Ruehlman's dismissal of the Indictment is not void for lack of jurisdiction.

Whether it was error on the merits to refuse to treat Judge Ruehlman's Entry as the functional equivalent of an acquittal is a question of federal constitutional law under the Double

Jeopardy Clause to be treated below.

## The Merits of Petitioner's Double Jeopardy Claim

The Double Jeopardy Clause of the United States Constitution affords a defendant three basic

protections:

> It protects against a second prosecution for the same offense after
> acquittal. It protects against a second prosecution for the same
> offense after conviction. And it protects against multiple
> punishments for the same offense.

*Brown v. Ohio*, 432 U.S. 161, 165 (1977), quoting *North Carolina v. Pearce*, 395 U.S. 711, 717

(1969). It is the first of these three protections which is in issue in this case. The Double Jeopardy

Clause of the Fifth Amendment was held to be applicable to the States through the Fourteenth

Amendment in *Benton v. Maryland*, 395 U.S. 784 (1969).

Jeopardy is said to "attach" in a case tried to a jury when the jury is sworn. *Crist v. Bretz*,

437 U.S. 28 (1978). Ordinarily jeopardy continues until that original jury has rendered a final

verdict either of acquittal or conviction. However, if the original jury is discharged without

rendering a verdict as the result of a mistrial, the jeopardy continues and a second trial before

another jury does not place the defendant in jeopardy a forbidden second time if the mistrial was at

defendant's request or the result of "manifest necessity." *United States v. Perez,* 22 U.S. (9 Wheat.)

579 (1824)(Story, J.); *Arizona v. Washington*, 434 U.S. 497 (1978).

Jeopardy also "continues" if a defendant obtains a reversal on appeal or a new trial on

request to the trial court. *United States v. Scott*, 437 U.S. 82, 91 (1978), holding the successful

appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to

support the verdict, poses no bar to further prosecution on the same charge, citing *Burks v. United States*, *supra*. In *Scott*, the Court found the origins of this rule in *Ball v. United States*, 163 U.S. 662 (1896):

> Their plea of former conviction cannot be sustained, because upon a writ of error sued out by themselves the judgment and sentence against them were reversed, and the indictment ordered to be dismissed. . . . [It] is quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offence of which he had been convicted.

163 U.S., at 671-672.

Petitioner accepts this general law on double jeopardy, but argues that Judge Ruehlman's Entry of dismissal is the functional equivalent of an acquittal on all the grounds he raised in his 137-page Motion to Dismiss and the failure of the Court of Appeals to accept that point renders its decision unconstitutional. As noted above, to the extent Petitioner raised non-Double Jeopardy arguments in the Motion to Dismiss, this Court cannot review them in this proceeding, either because they are non-constitutional and not subject to habeas review at any time, or because they are constitutional but non-Double Jeopardy claims which cannot be heard pre-trial.

### Insufficient Evidence on Count One

Petitioner argues that there was insufficient evidence presented in the 1996 trial to convict him on Count One which charged him with raping Sarah on an undetermined date in 1990. This Court agrees. The only testimony of record as to 1990 is that the complaining witness was asked

what Petitioner did to her in 1990 and she responded that she could not "remember when the last time was." (Motion to Dismiss, Exhibit D to Petition, Doc. No. 1, PageID 72-73.) Given that testimony, there was no basis for a jury to convict on the 1990 charge. Had a motion for judgment of acquittal been made at the close of the State's case, it should have been granted.[5]

However it is clear from the record that insufficiency of evidence on this Count was not raised as an assignment of error on direct appeal. In *Love 2008* the Court of Appeals held that failure to do so waived the claim and it was therefore barred by the Ohio criminal doctrine of *res judicata*. *Id.* ¶ 19.

There is no doubt that Ohio has such a doctrine, not invented for purposes of this case, but enunciated in *State v. Perry,* 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967). The Ohio courts have consistently enforced the rule. *State v. Cole*, 2 Ohio St. 3d 112, 443 N.E. 2d 169 (1982); *State v. Ishmail*, 67 Ohio St. 2d 16, 423 N.E. 2d 1068 (1981). Federal courts reviewing Ohio decisions in habeas cases have consistently held the rule is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F. 3rd 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994); *Van Hook v. Anderson*, 127 F. Supp. 2d 899 (S.D. Ohio 2001).

Petitioner argues that "a court is required to make a determination, from the record, as to whether further proceedings after remand would violate double jeopardy concerns because there was insufficient evidence to sustain a conviction adduced by the government in the first trial." (Traverse,

---

[5] This Court is not advised as to whether such a motion was made and the full state court record has not been filed, so an independent search cannot be made.

Doc. No. 17, PageID 1304, citing *Burks, supra; Patterson v. Haskins,* 470 F.3d 645 (6th Cir. 2007); and *Green v. Massey*, 437 U.S. 19 (1978).) The same argument is reprised in the Amended Petition at ¶ 47(A)(1)(h)(Doc. No. 34, PageID 1548), citing *Burks, supra; Patterson, supra;* and *State v. Broughton*, 62 Ohio St. 3d 253 (1991). Petitioner here clarifies that the asserted error is by the first court of appeals panel when it granted a new trial without deciding whether there had been sufficient evidence on Count One.

But Love has not demonstrated to this Court that he clearly raised that issue on appeal from denial of his motion for new trial. The relevant portion of the Court of Appeals opinion is completely opaque on the question: "The third and sixth assignments of error, alleging that the conviction is plain error and that Love is actually innocent, are moot, as Love will receive a new trial." *Love 2006* at ¶ 69.

At other places in the Amended Petition, Love argues that Judge Ruehlman's Entry is the "functional equivalent of an acquittal" as to the 1990 Count. For example, he makes that argument at ¶ 47(A)(1)(j) at PageID 1550 in conjunction with his argument, rejected above, that the Court of Appeals did not have subject matter jurisdiction in *Love 2008*.

In *Burks, supra,* the Sixth Circuit had found the evidence at trial was insufficient to convict, but had remanded for a determination of whether a new trial was warranted. On appeal, the United States Supreme Court held that the Court of Appeals finding amounted to an acquittal and therefore no new trial was possible. It also held a defendant does not waive his right to acquittal on the basis of evidentiary insufficiency by moving for a new trial.

Based on the holding in *Burks*, if Judge Ruehlman decided there was insufficient evidence to convict on Count One, that determination is final. While Judge Ruehlman's Entry is opaque on

-17-

how he evaluated Petitioner's claims in the Motion to Dismiss because so many arguments were made, it is clear that one claim which Petitioner advanced and Judge Ruehlman adopted was that there had been insufficient evidence presented on Count One of the Indictment. On that basis, Petitioner argued there was insufficient evidence to proceed to a retrial on Count One and the dismissal Entry must be read as accepting that argument.

In reversing Judge Ruehlman on this point, the Court of Appeals held that this matter was *res judicata* because it had not been raised in the direct appeal of the conviction, *State v. Love*, 2008 Ohio 6833, 2008 Ohio App. LEXIS 5735 ¶ 19 (Ohio App. 1st Dist. Dec. 26, 2008). However, the vacation of the original judgment by grant of the new trial eliminates the *res judicata* effect; by virtue of Ohio Revised Code § 2945.82, the parties are restored to the position they were in before any trial occurred. Thus although the Ohio criminal *res judicata* doctrine is an adequate and independent state ground of decision, *Love 2008* is internally inconsistent in attempting to apply both *res judicata* and Ohio Revised Code § 2945.82.

The Court of Appeals further held:

> And in any event, Love's argument is again directed to Sarah's inability to recall the exact times that the rapes had allegedly occurred, an issue we have already addressed. Thus, we find no merit in Love's claim that the evidence was insufficient.

*Id.* at ¶ 19. This holding, however, misses the fact that the only evidence of any offense occurring in 1990 was the complaining witness's answer that she did not remember any offense in 1990. No other witness testified to any offense in 1990. Given that answer, there is no evidence of any offense in 1990 on any date.

Insofar as Judge Ruehlman's Entry accepts Petitioner's argument on Count One of the Indictment, it amounts to an acquittal on that Count and is not subject to reversal because of the bar

of the Double Jeopardy Clause. Petitioner should be granted an unconditional writ of habeas corpus as to the 1990 conviction.

## The Remaining Counts of the Indictment

In the Indictment in this case the grand jury in Count 3 charges that Petitioner on an undetermined date in 1988 engaged in fellatio with the complaining witness; Counts 4 and 5 allege two separate acts of cunnilingus on undetermined dates in 1989. On its face and in its text, the Indictment has never been changed since the grand jury returned it.

## Multiplicity in the Indictment

Petitioner argues that the Indictment is duplicitous (Traverse, Doc. No. 17, PageID 1306; Amended Petition, Doc. No. 34, ¶¶ 5, 47(A)(1)(b), 47(A)(1)(e), 47(A)(1)(f), 47(A)(2)(b), 47(A)(2)(c), 47(A)(2)(e), and 47(A)(2)(k)). He notes that rape in Ohio is a discrete offense rather than a continuing offense, *citing Valentine v. Konteh*, 395 F.3d 626 (6th Cir. 2005). In *Valentine* Judge Merritt summarized the indictment and evidence:

> Valentine was convicted of 20 "carbon-copy" counts of child rape, each of which was identically worded so that there was no differentiation among the charges and 20 counts of felonious sexual penetration, each of which was also identically worded. The prosecution did not distinguish the factual bases of these charges in the indictment, in the bill of particulars, or even at trial. The only evidence as to the number of offenses was provided by the testimony of the child victim, who described typical abuse scenarios and

-19-

> estimated the number of times the abusive offenses occurred, e.g.,
> "about 20," "about 15" or "about 10" times.

*Id.* at 628. Valentine was convicted on all forty counts and sentenced to forty consecutive life

sentences[6]. The District Court for the Northern District of Ohio granted habeas relief on all forty

convictions, holding that the indictment did not give Valentine sufficient notice of the charges to

permit him to defend himself at trial and also to protect his Double Jeopardy rights if he were re-

charged in the future. The Sixth Circuit affirmed as to thirty-eight of the convictions but reversed

as to two. The court noted the lack of due process in charging a person with twenty identical counts

and not providing notice, even apart from the indictment, of what specific acts defendant was being

accused. At the same time, it refused to require notice of precise dates, times, places, etc.

> This Court and numerous others have found that fairly large time
> windows in the context of child abuse prosecutions are not in conflict
> with constitutional notice requirements. See *Isaac v. Grider*, 211 F.3d
> 1269, 2000 WL 571959 at *5 (four months); *Madden v. Tate*, 830
> F.2d 194, 1987 WL 44909, at *1-*3 (6th Cir. 1987) (six months); see
> also *Fawcett v. Bablitch*, 962 F.2d 617, 618-19 (7th Cir. 1992) (six
> months); *Hunter v. New Mexico*, 916 F.2d 595, 600 (10th Cir. 1990)
> (three years); *Parks v. Hargett,* 1999 U.S. App. LEXIS 5133, 1999
> WL 157431, at *4 (10th Cir. 1999)(seventeen months). Certainly,
> prosecutors should be as specific as possible in delineating the dates
> and times of abuse offenses, but we must acknowledge the reality of
> situations where young child victims are involved.

*Valentine*, 395 F.3d at 632.

The Indictment in this case, particularly as narrowed by the amended Bill of Particulars,

charges a date range of July 1, 1989 ["the later [sic] half of 1989"] through April 2, 1990, a nine-

month period well within the range of charging times approved by the court in *Valentine*. It does

_____

[6] Five of those sentences were vacated by the Ohio Court of Appeals.

not charge a continuing pattern of conduct. It differentiates the sexual misconduct charged: an act

of fellatio in 1988 and two separate acts of cunnilingus on different undetermined dates in 1989. In

fact, Love has much more notice of what he must defend against than Valentine did: he knows the

circumstances and place (6225 Savannah Avenue in Cincinnati) where Sarah alleges the abuse

happened. He himself has stipulated that he was in the Cincinnati area "at all other relevant times"

except November 17, 1988, through July 20, 1989 (Stipulation, Exhibit B to Petition, PageID 42.)

On the authority of *Valentine*, the Indictment in this case is sufficiently specific to satisfy

Due Process standards[7]. The *Valentine* court noted:

> Nothing in this opinion limits sexual abuse prosecutions to so-called
> "exceedingly narrow and precise charges." It expressly rejects
> Valentine's challenge on that ground. The Constitution does,
> however, demand that if a defendant is going to be charged with
> multiple counts of the same crime, there must be some minimal
> differentiation between the counts at some point in the proceeding.

*Id.* at 638. The Indictment is specific enough that, if the jury returns a not guilty verdict on any of

the three remaining counts, Love will be able to plead double jeopardy as a bar to retrial on any of

those counts, regardless of what dates within the indicted ranges are testified to at the new trial.

### Narrowing the Indictment by Testimony at the First Trial

As another theory why retrial is barred by the Double Jeopardy Clause, Petitioner argues that

---

[7] *Valentine* was a post-conviction case under 28 U.S.C. § 2254. To the extent
Respondent might assert a habeas court should not reach this Due Process issue of a duplicitous
indictment pre-trial, it is barred by its waiver of an exhaustion requirement. The exhaustion
doctrine is not jurisdictional. *Ex parte Royall*, 117 U.S. 241 (1886); *Granberry v. Greer*, 481
U.S. 129 (1987).

the testimony of the complaining witness effectively narrowed the indictment to the specific dates or date ranges to which she testified. (Amended Petition, Doc. No. 34, ¶ 47(A)(1)(d)-(g) PageID 1547-1548, citing *United States v. Miller*, 471 U.S. 130 (1985) and *United States v. Leichtnam,*[8] 948 F.2d 370 (7th Cir. 1991).

*Miller* supports Respondent's position rather than Petitioner's. In *Miller* a scrap metal dealer was charged with mail fraud in connection with a burglary at his business. The indictment charged both that he had consented to the burglary in advance and that he had lied to his insurer about the value of the loss. The Government proceeded to trial only on the second theory. On direct appeal the Ninth Circuit held that the variance between the indictment and the proof deprived Miller of his Fifth Amendment right to grand jury indictment. The Supreme Court unanimously reversed. It found that the indictment was sufficient under the Grand Jury Clause to give Miller adequate notice of what he was required to defend and also adequate to permit him to plead double jeopardy in any future prosecution. *Id.* at 135. *Miller* stands only for the proposition that a indictment narrowed by the testimony presented is still sufficient under the Grand Jury Clause if the remaining charge in the indictment is sufficient in itself. *Miller* does not stand for the proposition – for which it is cited – that testimony at a first trial narrows the indictment to the testimony given so as to prevent a variance from that testimony on a second trial obtain by the defendant.

*Leichtnam* also does not support Petitioner's position. There the defendant was tried on evidence that was broader than the indictment and the Seventh Circuit held this violated the defendant's grand jury right. But it expressly held that there was no constitutional violation if the evidence presented was narrower than the indictment. 948 F.2d at 377. That is precisely what the

---

[8] Defendant's name is misspelled as "Leichman" in the Amended Petition. PageID 1547.

State proposes to do in this case: try Love on a set of dates narrower than the indictment. And even if the Seventh Circuit had held in favor of Leichtnam, that would not support Love here because the court was interpreting Leichtnam's grand jury rights under the Fifth Amendment. The Grand Jury Clause of the Fifth Amendment is not binding on the States. *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,* 408 U.S. 665, 687-88 n. 25 (1972) *Gerstein v. Pugh*, 420 U.S. 103 (1975); *Williams v. Haviland*, 467 F.3d 527 (6th Cir. 2006)(*Apprendi* does not change this result).

There is no constitutional authority cited by Petitioner or known to the Court by which the Double Jeopardy Clause or any other applicable constitutional right requires that the Indictment in this case be narrowed to the dates testified to by Ms. Adams in 1996.

Petitioner also argues that the amended Bill of Particulars re-files and re-charges offenses which were "abandoned" by the State when it presented Ms. Adams testimony in 1996. But the Bill of Particulars is not a charging document and there is, in any event, no constitutional prohibition on amending a bill of particulars after remand for new trial.

## Functional Equivalent of an Acquittal

Petitioner argues Judge Ruehlman's Entry granting the Motion to Dismiss was the functional equivalent of an acquittal on Counts 3, 4, and 5 (Amended Petition, Doc. No. 34, ¶ 22, PageID 1536; ¶ 47(A)(1)(j) PageID 1550; ¶ 47(A)(2)((d) PageID 1552-1553) and thus retrial is barred under the Double Jeopardy Clause. This is, he says, because he submitted thirty-seven pages of argument

including this argument and Judge Ruehlman granted the Motion "for the reasons asserted."

Petitioner asserts, with no proof, that Judge Ruehlman intended an end to all proceedings by his Entry, but the Entry does not say that; indeed, it does not even say the dismissal is with prejudice. At oral argument Petitioner's counsel offered to obtain an affidavit to that effect from Judge Ruehlman. That would be improper because a Court of Common Pleas speaks through its journal entries, not through later affidavits explaining what the entries mean.[9]

Judge Ruehlman's Entry cannot plausibly be read as an acquittal on Counts 3, 4, and 5 because, as the Court of Appeals noted, a motion to dismiss under the Ohio Rules of Criminal Procedure only raises matters that are capable of determination without a trial of the general issue[10]. *State v. Love*, 2008 Ohio 6833, 2008 Ohio App. LEXIS 5735 ¶ 10 (Ohio App. 1st Dist. Dec. 26, 2008). As the Court of Appeals put it, "there is no equivalent for a motion for summary judgment in criminal proceedings." *Id.* at ¶ 13. Nor does the Federal Constitution require that something like a summary judgment procedure be provided pretrial in state criminal cases. Put another way, the Double Jeopardy Clause does not require States to authorize trial judges to decide issues of fact pre-trial.

Petitioner obtained a new trial by gathering evidence that he was not in Hamilton County on the dates the complaining witness testified to, but what he obtained was a new trial, not an acquittal.

---

[9] Whether Judge Ruehlman would have authority now, in the face of *Love 2008*, to enter an amended entry saying that all counts are dismissed with prejudice is obviously a matter of Ohio law and not before this Court.

[10] While it might have been error, as this portion of the Court of Appeals' opinion suggests, for Judge Ruehlman to enter an acquittal on Count One, there is no doubt that he had jurisdiction and that he accepted that argument from Petitioner. This is consistent with the notion that even a completely erroneous acquittal by a jury is binding under the Double Jeopardy Clause.

But he did not obtain an acquittal on these counts in the first trial, but rather a conviction which is now set aside for a new trial with continuing jeopardy.

## Alternative Theory of Guilt

Petitioner asserts that allowing the State to proceed on the three remaining counts would be to allow it an alternative theory of guilt, a result prohibited by the Double Jeopardy Clause. (Amended Petition, Doc. No. 34, ¶ 47(A)(1)(i), *citing Piaskowski v. Bett*, 256 F.3d 687 (7th Cir. 2001), and *United States v. Syme*, 276 F.3d 131 (3rd Cir. 2002).

In *Piaskowski* the Seventh Circuit affirmed grant of the writ on an insufficient evidence claim directed to a conviction for conspiracy to murder. At the time of the appeal, the State was already planning to reindict Piaskowski on a conspiracy to assault theory. The Circuit found the evidence for the proposed new charge was as lacking as on the prior charge and said its own decision was the "functional equivalent of an acquittal," thus precluding retrial on the new theory. 256 F.3d at 695.

This is a very different case: Love has never won an acquittal. On the basis of the Stipulation, he cannot be convicted of any sexual misconduct with Ms. Adams between November 17, 1988, and July 20, 1989. As the Court of Appeals held, she may have been confused about dates and if that confusion persists in a second trial, Love may well win an acquittal, but that has not yet happened. Ms. Adams other testimony (about places, times of day, actual conduct, etc.) is certainly sufficient for conviction if believed by a second jury.

*Syme* is also not helpful to Petitioner's cause. In that case one of the many counts of

conviction was one in which the district court instructed on a charge not included in the count of conviction. The conviction on that count was remanded for new trial at which the Government was precluded from presenting evidence of a medical necessity theory because it had presented insufficient evidence on that theory at the first trial. In this case the State does not seek to change its theory of Love's guilt: the States claims he is guilty because he engaged in certain proscribed sexual conduct with Sarah Adams who was then under thirteen years of age. The State has (presumably) alternative evidence about when, within the indicted time range, these crimes occurred, but not an alternative theory of liability.

## Conclusion

Based on the foregoing analysis, it is respectfully recommended Petitioner be granted an unconditional writ of habeas corpus barring the State of Ohio from retrying him on Count One. All

other claims for relief in the Petition should be denied. If the Court agrees with this recommendation, it should, however, grant Petitioner a certificate of appealability and, if necessary, leave to appeal *in forma pauperis.*

November 8, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge


## NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

**N.B. Because decision of this case has been long delayed, the Court will look critically on requests for extensions of time to object, even if mutually consented to.**

J:\Documents\Love Habeas Sub Merits R&R.wpd